UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY RAY CORNETT, JR.,

          Petitioner,          Case No. 2:18-cv-13462

v.

                              Honorable George Caram Steeh

THOMAS WINN,

          Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Anthony Ray Cornett, Jr., a state prisoner in the custody of the Michigan Department of Corrections, seeks a writ of habeas corpus pursuant to U.S.C. § 2254. Petitioner challenges his plea-based conviction for one count of armed robbery, Mich. Comp. Laws § 750.529. His grounds for relief allege that the trial court had an obligation to determine whether he was competent at his sentencing, and he was denied the right to meaningful allocution at his sentencing due to a lack of competence. See Pet. (ECF No. 1, PageID.12-13).

Respondent Thomas Winn argues in an answer to the habeas petition that the Court should deny relief because the state court's denial of relief was not contrary to, or an unreasonable application of, clearly

established federal law and because there is no constitutional right to allocution.  See Answer in Opp'n to Pet. for Writ of Habeas Corpus (ECF No. 8, PageID.59, 81).  The Court agrees with respondent.  Accordingly, the Court will deny the habeas petition, decline to issue a certificate of appealability, and deny leave to appeal this decision in forma pauperis.

## I.  Background

Moses Campbell testified at petitioner's preliminary examination that on January 23, 2017, petitioner approached him on a bicycle as Campbell was walking past an abandoned building in Southgate.  See 2/3/17 Prelim. Examination Tr. (ECF No. 10-2, PageID.98-100).  When petitioner asked Campbell what he was doing, Campbell responded that he was trying to collect bottles so that he could have some fun on his birthday and possibly go to the casino.  See id. at PageID.100.

Campbell was holding a bag of bottles at the time, see id., and after petitioner said that he might have something for Campbell, Campbell followed petitioner behind the abandoned building.  Petitioner then pulled out a bottle of vodka, and the two men began to drink the vodka.  See id. at PageID.100-01.  After a while, petitioner pulled a hammer from his jacket and hit Campbell on the side of the head with the hammer.  See id. at PageID.101-03.  Campbell ran away because he feared what might happen

next. He then flagged down a police officer, described petitioner to an officer, and watched as petitioner rode away with his bottles. See id. at PageID.103-04.

Campbell claimed at the preliminary examination that his ability to recall what happened was not impaired by his consumption of alcohol. See id. at PageID.109. At the conclusion of the preliminary examination, the state district court judge bound petitioner over to Wayne County Circuit Court on three charges: armed robbery, assault with intent to do great bodily harm less than murder, and felonious assault. See id.at PageID.119-21.

On the date set for the final pretrial conference, petitioner pleaded guilty to one count of armed robbery. In return, the prosecution dismissed the two assault charges and a habitual offender notice that would have required petitioner to serve a mandatory minimum sentence of twenty-five years in prison if he had gone to trial and been convicted. The parties also agreed that the sentence would be seven to twenty years in prison. See 4/12/17 Final Conference Tr. (ECF No. 10-4, PageID.135-38).

Petitioner claimed to understand the plea and sentencing agreement and the rights that he was waiving by pleading guilty. See id. at PageID.136-39. He also admitted that on January 23, 2017, he used a

hammer or knife to steal some bottles and cans from Moses Campbell. See id. at PageID.139. The trial court determined that petitioner had pleaded guilty freely, knowingly, and voluntarily and that the factual basis for petitioner's plea was sufficient to find him guilty of one count of armed robbery. See id. at PageID.140.

At the subsequent sentence proceeding, petitioner apologized for the inconvenience that he had caused and stated that it would never happen again. See 4/28/17 Sentence Tr. (ECF No. 10-5, PageID.149-50). The trial court then sentenced petitioner to prison for seven to twenty years, pursuant to the parties' sentencing agreement. See id. at PageID.150.

Petitioner raised his two habeas claims in a delayed application for leave to appeal. The Michigan Court of Appeals denied the application "for lack of merit in the grounds presented" to the court. See People v. Cornett, No. 340796 (Mich. Ct. App. Dec. 1, 2017); ECF No. 10-6, PageID.153.

Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court. On May 29, 2018, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues presented to the court. See People v. Cornett, 501 Mich. 1083; 911 N.W.2d 704 (2018). On November 6, 2018, petitioner filed his habeas corpus petition.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' "  Wilson v. Sellers, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)) (alterations added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id., at 413, 120 S.Ct. 1495.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  Id., at 410, 412, 120 S.Ct. 1495.

> The state court's application of clearly established law must be objectively unreasonable. Id., at 409, 120 S.Ct. 1495.

*Id*. at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]' " Renico v. Lett, 559 U.S. 766, 773 (2010) (internal and end citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." Saulsberry v. Lee, 937 F.3d 644, 648 (6th Cir.) (quoting Richter, 562 U.S. at 103), cert. denied, 140 S. Ct. 445 (2019). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.' " Kendrick v. Parris, 989 F.3d 459, 469 (6th Cir. 2021) (quoting Woods v. Donald, 575 U.S. 312, 316 (2015)), cert. denied, 142 S. Ct. 483 (2021).

## III.  Discussion

### A.  Competence

Petitioner alleges that the trial court was obligated to determine sua sponte whether he was competent at his sentencing because he may have been incompetent during the plea or sentence proceedings.  To support this argument, petitioner relies on the presentence investigative report that was prepared in his criminal case.  The report states that petitioner was diagnosed with bipolar disorder, clinical depression, and anxiety and that he was prescribed Zoloft, Rispedal, Prozac, and Remeron.  See Pet. (ECF No. 1, PageID.12).

### 1. Clearly Established Federal Law

"The conviction of a defendant who is legally incompetent violates a defendant's right to due process of law."  Mackey v. Dutton, 217 F.3d 399, 411 (6th Cir. 2000) (citing Pate v. Robinson, 383 U.S. 375, 378 (1966)).  Thus, "[a] criminal defendant may not . . . plead guilty unless he does so 'competently and intelligently.' "  Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 468 (1938)).

The test for competence is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual

understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam). This standard applies whether the defendant goes to trial, pleads guilty, or proceeds to sentencing. See Moran, 509 U.S. at 391 (holding that the competency standard for pleading guilty is not higher than the competency standard for standing trial); United States v. Pitts, 997 F.3d 688, 700 (6th Cir. 2021) (stating that "[t]he test for competency of a represented party, either to stand trial or to enter a guilty plea, is whether a defendant has 'sufficient ability to consult with his lawyers and a reasonable degree of rational and factual understanding of the proceedings against him' ") (quoting United States v. Denkins, 367 F.3d 537, 547–48 (6th Cir. 2004) (quoting United States v. Ford, 184 F.3d 566, 580 (6th Cir. 1999)); United States v. Dubrule, 822 F.3d 866, 875 (6th Cir. 2016) (stating that, "[t]o be competent to stand trial or proceed to sentencing, a criminal defendant must possess (1) a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,' and (2) 'a rational as well as factual understanding of the proceedings against him.' ") (quoting Dusky, 362 U.S. at 402).

"[A] court's failure to make a proper competency inquiry where there is substantial evidence of a defendant's incompetency violates due process

. . . ." Mackey, 217 F.3d at 411. The test for determining whether a trial court should have resorted to an evidentiary hearing is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency[.]" Filiaggi v. Bagley, 445 F.3d 851, 858 (6th Cir. 2006) (quoting Williams v. Bordenkircher, 696 F.2d 464, 467 (6th Cir. 1983)).

When there is a bona fide or substantial doubt regarding a defendant's competence, a trial court on its own motion must conduct a hearing on the competency issue. Robinson, 383 U.S. at 385; Williams, 696 F.2d at 466.

> [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of
> manifestations and subtle nuances are implicated.

Drope v. Missouri, 420 U.S. 162, 180 (1975).

### 2. Application

Petitioner asserts that he may have been incompetent at his plea and sentencing. But his plea attorney did not raise this issue in the trial court,

and "judges must depend to some extent on counsel to bring issues into focus." Id. at 176–77.  At the plea proceeding, moreover, defense counsel assured the trial court that petitioner was prepared to move forward, and petitioner informed the court that he was not under the influence of any substance that was affecting his ability to make decisions.  See 4/12/17 Final Conference Tr. (ECF No. 10-4, PageID.136).  Petitioner then claimed to understand the written settlement offer which he signed, the maximum penalty for armed robbery, the nature of the plea and sentencing agreement, the rights that he was waiving by pleading guilty, and the factual basis for his plea.  See id. at PageID.135-39.

Most of petitioner's responses to the trial court's questions at the plea proceeding were "Yes" or "Yes, your honor."  However, one week before his sentencing, petitioner informed the person who prepared the presentence investigation report that he was truly sorry for what he did, that he hoped God would forgive him, and that he planned on getting back into the community and doing what was right.  Sealed Exhibit (ECF No. 12, PageID.235).

What is more, at petitioner's sentencing, he said that he had informed his attorney about the staff at the jail losing his paperwork.  He then

informed the trial court that he needed the lost items, including discovery materials, photos, and the transcript of his preliminary examination. See 4/28/17 Sentence Tr. (ECF No. 10-5, PageID.148-49). And when the trial court asked petitioner whether he had anything else to say, petitioner apologized for the inconvenience he caused the victim, and he stated that the incident would never happen again. See id. at PageID.149.

Although the record indicates that petitioner was able to understand the court proceedings and articulate his concerns, he relies on the presentence investigation report which indicates that he was prescribed medication for depression, anxiety, and bipolar disorder. But that was in 2010, according to the report, and petitioner stopped taking psychotropic medication in 2012 or 2013. Sealed Exhibit (ECF No. 12, PageID.232, 244).

It is not clear from the report whether petitioner no longer needed the medication after 2013 or whether he simply chose not to take it. But even if he was mentally ill at the time of his plea and sentencing, " '[i]t does not follow that because a person is mentally ill he is not competent to stand trial.' " United States v. Davis, 93 F.3d 1286, 1290 (6th Cir. 1996) (quoting Newfield v. United States, 565 F.2d 203, 206 (2d Cir. 1977)).

Petitioner demonstrated an ability to consult with counsel, and he showed a rational understanding of the court proceedings and the facts at both his plea and sentencing. Thus, there was not a bona fide or substantial basis for doubting his competence, and the trial court had no obligation to hold a hearing and determine whether petitioner was competent. Further, the decision of the Michigan Court of Appeals – that petitioner's claim lacked merit -- was objectively reasonable. Petitioner is not entitled to relief on his first claim.

## B. Allocution

Petitioner's only other claim is related to his first claim. He alleges that, if he was incompetent at his sentencing, he was prejudiced by his inability to comprehend the proceeding, assist in the proceeding, and offer meaningful allocution. See Pet. (ECF No. 1, PageID.13).

Petitioner's argument fails for more than one reason. First, he merely speculates that he was incompetent, and there is no evidence in the record that he was incompetent. He demonstrated his ability to consult with counsel and to understand the proceedings when he (1) stated at his sentencing that he had informed his attorney about his lost court file, and (2) told the trial court that he needed specific items from his file. See 4/28/17 Sentence Tr. (ECF No. 10-5, PageID.148-49).

Second, "[t]he Supreme Court has not expressly recognized a constitutional right to allocution," United States v. Lawrence, 735 F.3d 385, 407 (6th Cir. 2013), and the Court of Appeals for "the Sixth Circuit has noted that '[t]here is no constitutional right to allocution under the United States Constitution.' " Cooey v. Coyle, 289 F.3d 882, 912 (6th Cir. 2002) (quoting Pasquarille v. United States, 130 F.3d 1220, 1223 (6th Cir. 1997) (citing Hill v. United States, 368 U.S. 424, 428 (1962)). Thus, even if petitioner was denied an opportunity for allocution, he was not deprived of a constitutional right.

Lastly, despite petitioner's allegations that he may have been incompetent, he provided a meaningful allocution. He stated (1) that he was sorry for any inconvenience to the victim, and (2) that it would never happen again. See 4/28/17 Sentence Tr. (ECF No. 10-5, PageID.149-50).

The state appellate court's conclusion that petitioner's claim lacked merit was objectively reasonable. Petitioner, therefore, has no right to relief on his second claim.

## IV.  Conclusion

The Michigan Court of Appeals was the last state court to adjudicate petitioner's claims on the merits, and it did not make an objectively unreasonable mistake when it rejected petitioner's claims for lack of merit.

The state court's decision was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the Court denies the habeas corpus petition.

The Court declines to issue a certificate of appealability because petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists could not debate whether "the petition should have been resolved in a different manner or that the issues presented [are] adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court also declines to grant permission to appeal this decision in forma pauperis. Although petitioner was granted permission to proceed without prepaying fees or costs for this action, see ECF No. 5, an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A). Petitioner may apply to the Sixth Circuit Court of Appeals for a certificate of appealability and for permission to appeal in forma pauperis. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 24(a)(5).

IT IS SO ORDERED.

Dated: January 21, 2022

                                             s/George Caram Steeh
                                             GEORGE CARAM STEEH
                                             UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 21, 2022, by electronic and/or ordinary mail and also on Anthony R. Cornett, Jr #663352, Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623.

s/Brianna Sauve
Deputy Clerk